504 So.2d 802 (1987)
Paul A. WELKER, Appellant,
v.
STATE of Florida, Appellee.
No. BN-105.
District Court of Appeal of Florida, First District.
April 1, 1987.
*803 Leo A. Thomas, of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
John M. Koenig, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Paul Welker appeals his conviction and sentence for violating section 893.13(1)(a), Florida Statutes (1985) based on the unlawful sale, delivery, or possession of cocaine with intent to distribute. Appellant raises two issues on appeal. First, he contends that the trial judge's reasons for departing from the sentencing guidelines were invalid. Second, he contends that a tape recording of two telephone conversations between him and a confidential informant was improperly admitted during his trial. Finding merit to both points, we reverse.
Appellant was charged with trafficking in cocaine after he sold 35 grams (about 1 1/4 ounces) of cocaine to an undercover deputy sheriff. At the time of appellant's arrest approximately 1/4 ounce of additional cocaine was found in the back seat of his vehicle. A clear glass vial containing liquid cocaine was found in appellant's pocket, as was a pill bottle containing several butalbital pills. At the time of his arrest appellant was accompanied by two relatives. One of his relatives had a weapon, but since appellant was not charged with possession of a firearm the court granted appellant's motion in limine to prohibit the state from mentioning the weapon at trial. Appellant had no criminal record prior to this offense.
At trial, appellant contended that he had been entrapped by Joe Baggett, the confidential informant, acting in concert with deputies in the sheriff's department. The state played a tape recording of two telephone conversations between Baggett and the appellant as part of its evidence at trial. A deputy sheriff present when the telephone calls were made testified that Baggett had consented to the calls being taped. Baggett did not testify at trial.
The jury found appellant guilty of the lesser included offense of possession, sale, or delivery of cocaine with intent to distribute and the court entered judgment in accordance with the jury verdict. The court departed from the guidelines recommendation of any non-state prison sanction and *804 sentenced appellant to four years imprisonment followed by two years probation, stating four reasons for departure:
1) The amount of cocaine involved in the actual delivery to the undercover officer was 35 grams, well in excess of the threshold amount needed to sustain conviction for a lesser included offense to trafficking in cocaine.
2) Additional amounts of cocaine were found on defendant's person and in his vehicle at the time of arrest. These substances were found in the more common granular form and in the less common liquid form. Furthermore, two other persons and a firearm were found in the vehicle at the time of defendant's arrest. These additional circumstances evince the degree of sophistication in which defendant operated and collectively justify departure.
3) Prior to his arrest but during the delivery of the 1 and 1/4 ounces of cocaine to the undercover officer, defendant stated his readiness to deliver an additional 6 ounces of cocaine to the officer. This circumstance warrants departure as well.
4) Defendant's trial testimony and statements to the probation officer who prepared the pre-sentence investigation report acknowledges prior possession and use of cocaine and marijuana. These episodes signify to the Court defendant's disregard of the law and the need for imposition of a sentence with some deterrent effect. A lesser sentence would not be commensurate with the seriousness of the defendant's offense.
Addressing appellant's first point on appeal, we conclude that each of these reasons is invalid. While some decisions have disapproved departure based on the quantity of drugs involved, see, e.g., Newton v. State, 490 So.2d 179 (Fla. 1st DCA 1986); Jimenez v. State, 486 So.2d 36 (Fla. 2d DCA 1986); Gallo v. State, 483 So.2d 876 (Fla. 2d DCA 1986), other decisions have approved departure where the amount of drugs the defendant possessed far exceeded the amount required for conviction of the offense, see, e.g., Atwaters v. State, 495 So.2d 1219 (Fla. 1st DCA 1986); Mitchell v. State, 458 So.2d 10 (Fla. 1st DCA 1984), petition for review denied, 464 So.2d 556 (Fla. 1985). But none of those decisions have defined a uniform legal criteria for determining at what level the amount of drugs possessed would permit departure. Here, appellant was exonerated of the charge of trafficking in more than twenty-eight grams of cocaine[1] but found guilty of the charge of sale or possession[2] upon proof that he sold thirty-five grams. We conclude that this amount of drugs is not sufficiently excessive for purposes of the offense involved to serve as a valid reason for departure under the circumstances of this particular case. We acknowledge the apparent diversity of views on this subject, see the discussion in Newton v. State, 490 So.2d 179, and find it most difficult if not impossible to harmonize all of the decisions on this question. Accordingly, as in Atwaters v. State, 495 So.2d 1219, we certify to the supreme court the following question of great public importance:
MAY THE AMOUNT OF DRUGS POSSESSED BY THE DEFENDANT BE USED AS A REASON FOR DEPARTURE FROM THE SENTENCING GUIDELINES IN A PROSECUTION FOR UNLAWFUL POSSESSION OF DRUGS, AND IF SO, UNDER WHAT CRITERIA OR CONDITIONS?
Regarding the second reason for departure, appellant was not convicted of possession of a firearm or possession of other drugs, so these reasons are invalid as "factors relating to the instant offenses for which convictions have not been obtained." Fla.R.Crim.P. 3.701(d)(11). The trial court's reliance on Mullen v. State, 483 So.2d 754 (Fla. 5th DCA 1986), is misplaced. Mullen involved facts showing that the defendant was a professional, full-time drug smuggler. Even assuming that the facts recited by the trial judge could properly be considered, they are insufficient *805 to support a conclusion that appellant was a professional drug smuggler.
The third reason given by the trial court, defendant's readiness to deliver more drugs, is also an invalid reason. In Lindsey v. State, 453 So.2d 485 (Fla. 2d DCA 1984) it was stated that:
the judge's reasoning that the appellant `could have' been convicted of [more] counts is speculative. Speculation as to what the appellant might have done in the future is not a clear and convincing reason for departure from the guidelines.
Assuming appellant offered to deliver additional cocaine to the police officer, whether he could or would have done so is speculative, and thus not a clear and convincing reason for departure.
The state admits that the fourth reason given by the trial judge, the need for greater deterrent effect, is invalid.
As all four of the reasons given for departure are invalid, we find it necessary to vacate appellant's sentence.
Appellant's second contention, that it was error to admit the tape recording into evidence without Baggett's testimony that he consented to the taping of the conversation with appellant, is based directly on the Florida Supreme Court's decision in Tollett v. State, 272 So.2d 490 (Fla. 1973). In that case the supreme court held that, as a necessary predicate to the admissibility of a tape recording of a conversation between a confidential informer and a defendant, the informer must take the witness stand and testify that he consented to the recording of the conversations. The supreme court reasoned that allowing the tape recording to be admitted without requiring the informant to testify "eliminates an accused's opportunity to cross-examine the alleged informant... . [g]enerally, it furthers the invasion of privacy by the police, encourages wiretapping, entrapment and manufactured evidence." 272 So.2d at 495.
In this case Baggett, the confidential informant, did not testify at trial, so the Tollett requirement was not met. The state argues, however, that Tollett is no longer the law of this state because the 1982 amendment to Article I, § 12, of the Florida Constitution provides that the right to protection against unreasonable search and seizure found in the Florida Constitution is now governed by federal law:
This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
The state argues that because the United States Supreme Court decision in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), is inconsistent with the holding in Tollett, a confidential informer need no longer testify at trial in a Florida state court to establish his consent to the taping of a conversation.
In Tollett, the Florida Supreme Court considered, and rejected, the argument that the plurality holding in White was controlling. The court declined to apply the result in White for several reasons. First, noting that Article I, § 12, expressly protects against "the unreasonable interception of private communications by any means," whereas the federal constitution contains no such explicit provision, the court concluded that "In Florida, at least, the protection of privacy in the area of communications is constitutionally mandated in express language. This court is not at liberty to relax this protection afforded by the State Constitution." 272 So.2d at 493. The court also discussed § 934.01(4), Florida Statutes, which serves to further implement the quoted constitutional right and reads:
To safeguard the privacy of innocent persons, the interception of wire or oral communications when none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing *806 court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurance that the interception is justified and that the information obtained thereby will not be misused.
See also, Fla. Stat. § 934.03(2)(c). The court then held that the "consent" required by the statute "must be shown through proper testimony  not hearsay."[3] The court went on to state:
[I]t is an elementary rule of evidence that a party to a discussion or communication with a defendant may take the witness stand and testify, subject to cross-examination, as to the contents of his communication or discussion with a defendant and this can include as a logical concomitant to his testimony any tape or electronic recordings of such communications or discussions which he himself made or which he authorized (consented for) police officers to make.
272 So.2d at 494.
The supreme court's decision in Tollett appears to be based on its interpretation of the constitution, its construction of chapter 934, and on general rules of evidence.[4] There is no acceptable basis for concluding that Tollett is a purely constitutional decision which was superseded by the 1982 amendment to the Florida Constitution. That amendment did not require that Florida general rules of evidence be construed in accordance with decisions of the United States Supreme Court, nor did it prevent our supreme court from setting evidentiary requirements for proof of consent under chapter 934, Florida Statutes.
Even were we to assume that Tollett is based entirely on a constitutional rationale, the Supreme Court's decision in United States v. White does not establish a rule which the courts of this state are obliged to follow under the amendment to Article I, § 12. Only four justices joined the plurality opinion in White. Two other justices concurred in result only, basing their respective concurrences on principles separate from those of the majority and from each other.[5] Since the "rule" of the plurality opinion cited by the state does not represent the decision of a majority of the *807 justices on the court, we do not view it as sufficiently definitive to overrule, pursuant to the 1982 amendment to the Florida Constitution, a contrary Florida Supreme Court decision.[6] The other supreme court decisions cited by the state, Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), and United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), deal with consent given by third parties for a search of premises, a materially distinguishable situation. The same may be said of the decision in Palmer v. State, 448 So.2d 55 (Fla. 5th DCA 1984). Although those decisions may be said to be logically similar to situations like Tollett, crucial policy differences exist where, as here, a confidential informant is involved. A defendant will have a difficult time challenging the voluntariness, and indeed the existence, of an informant's consent if the defendant cannot even obtain the name, much less the testimony, of the informant said to have given the consent. Since there is not, to our knowledge, a decision of the United States Supreme Court so clearly on point that Tollett can no longer be treated as the controlling law in this state, we decline to apply the rationale of those cases to accomplish a result that is inconsistent with the Tollett decision. Whether Tollett should be overruled or receded from is a decision more properly left to our supreme court.
We decline, therefore, to hold that Tollett has been effectively superseded by the 1982 constitutional amendment and United States Supreme Court decisions construing the fourth amendment to the federal constitution, and hold it was error for the trial court to admit the tape recording without testimony from the confidential informant establishing his consent.
Having listened to the tapes and considered them in context with the entire record in the case, we cannot say that their admission was harmless error under the test stated in State v. Diguilio, 491 So.2d 1129 (Fla. 1986). Appellant's conviction is reversed and this cause is remanded for a new trial.
In view of the four to three vote in Tollett and the rationale of federal cases inconsistent with that decision, we certify the following question of great public importance to the Florida Supreme Court:
HAS THE REQUIREMENT, ENUNCIATED IN TOLLETT v. STATE, 272 So.2d 490 (FLA. 1973), THAT CONSENT TO THE TAPING OF A CONVERSATION MUST BE ESTABLISHED BY THE TESTIMONY OF THE PERSON WHO CONSENTED, BEEN SUPERSEDED BY THE 1982 AMENDMENT TO ARTICLE I, § 12, OF THE FLORIDA CONSTITUTION AND UNITED STATES SUPREME COURT DECISIONS CONSTRUING THE FOURTH AMENDMENT TO THE FEDERAL CONSTITUTION?
REVERSED AND REMANDED.
SHIVERS, J., concurs.
SMITH, J., concurs specially.
SMITH, Judge, specially concurring with opinion.
I agree with the majority's opinion and decision on the sentencing guidelines issue. I may differ somewhat in my views on the Tollett issue, and therefore add these brief comments in explanation of my joining in the result reached by the majority.
The exclusion of evidence obtained by means of electronic eavesdropping with the consent of one party to the conversation is *808 not violative of the Fourth Amendment under United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Tollett v. State, 272 So.2d 490 (Fla. 1973), recognized this as the holding of White, and agreed that when consent is given, the seizing of evidence by electronic means does not violate the Fourth Amendment.
The Tollett court, however, imposed an evidentiary requirement not found in White or other federal decisions as to the manner in which such consent must be established at trial to render the evidence admissible. As pointed out by the majority, whether this trial standard is to be viewed as grounded entirely upon constitutional considerations so as to prohibit its use to bar admissibility under the 1982 amendment to Article I, Section 12, Florida Constitution, is not entirely clear. That amendment requires, among other things, that the right to protection against unreasonable searches and seizures shall be "construed in conformity with" the Fourth Amendment. I think the Tollett standard meets this test, because that decision agrees that the Fourth Amendment is not violated when the evidence is obtained by consent. Therefore, the remaining language of Article I, Section 12, specifying that evidence "obtained in violation of this right" shall not be admissible, is not implicated by application of the Tollett rule. That provision specifies only one condition under which the evidence shall not be admissible, i.e., if it would be inadmissible under decisions of the United States Supreme Court. It does not preclude the application of other reasons for inadmissibility, such as nonconformity with rules of evidence or procedures established by the court to effectuate the uses and purposes of statutory provisions. In other words, the constitutional amendment, as I see it, does not purport to ordain a carte blanche rule of admissibility for all evidence proffered in the trial of criminal cases, regardless of all other considerations. Whether or not certain evidence should be deemed inadmissible "hearsay" in a given context is not something I would ordinarily expect to be considered of constitutional dimensions. It can be argued, I will concede, that the manner in which "consent" must be proven in order to avoid the strictures of the prohibition against unreasonable searches and seizures is part and parcel of the constitutional right itself. If so, and if no other sound reason for exclusion can be articulated by the court that issued the Tollett decision, then the ruling should be changed. I conclude that the matter is of sufficient doubt that this court should refrain from a ruling which directly contravenes a Florida Supreme Court decision.
I therefore join in reversal on the Tollett issue, and agree to certify as a question of great public importance.
NOTES
[1] § 893.135(1)(b)1, Fla. Stat. (1985).
[2] § 893.13(1)(a), Fla. Stat. (1985).
[3] The court apparently overlooked the doctrine that the giving of consent is a verbal act, and therefore testimony that someone has given consent is not hearsay. See, Breedlove v. State, 413 So.2d 1, 6 (Fla.), cert. denied 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); Lombardi v. Flaming Fountain, Inc., 327 So.2d 39 (Fla. 2d DCA 1976); McCormick on Evidence, 732-33 (E. Cleary 3rd ed. 1984).
[4] Subsequent cases have done little to clarify the rationale of the Tollett decision. Although not directly considering the issue, several cases have discussed Tollett as if it were an evidentiary, rather than constitutional or statutory, ruling. E.g., State v. Shaktman, 389 So.2d 1045 (Fla. 3d DCA 1980) ("Tollett merely announces the evidentiary rule that as a predicate to the admission of the tape recording [of] a seized conversation, the consenting party must testify that he consented to the recording") review denied, 397 So.2d 779 (Fla. 1981). Other cases have discussed the Tollett requirement as if it were based on a construction of § 934.03. State v. Williams, 443 So.2d 952 (Fla. 1983); Evans v. State, 473 So.2d 745 (Fla. 2d DCA 1985); State v. Leonard, 376 So.2d 427 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1115 (Fla. 1980). Still other cases have discussed Tollett as a constitutional requirement. State v. Scott, 385 So.2d 1044 (Fla. 1st DCA 1980); Franco v. State, 376 So.2d 1168 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 636 (Fla. 1980).
[5] In White, four justices rejected the argument that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), required a warrant before a confidential informer could record his conversations with a defendant. The justices reasoned that, because the confidential informant could testify concerning the conversations without violating the defendant's Fourth Amendment rights, a recording of the same conversation would also not violate the Fourth Amendment. The four justices further held that the testimony of the confidential informant was not crucial to the determination of whether the recording violated the defendant's Fourth Amendment rights, although they noted that the informer's disappearance "may raise evidentiary problems." 401 U.S. at 754, 91 S.Ct. at 1127. Justice Black concurred on the basis of his opinion, expressed in his dissent to Katz, that eavesdropping carried on by electronic means does not constitute a "search" or "seizure" within the meaning of the Fourth Amendment. Justice Brennan argued that the Fourth Amendment interposes a warrant requirement where an informant secretly records his conversations with an accused. He concurred in the result, however, because he agreed with the plurality that Katz should not be applied retroactively.
[6] In Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977), the United States Supreme Court stated, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, `the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ...'" quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (only "narrowest grounds" of a plurality opinion are entitled to precedential weight). Under this approach, the narrowest ground for the decision in White is that the Fourth Amendment does not require a warrant where a confidential informant voluntarily records his conversations with a defendant. This holding in no way encompasses the issue before us here.